Thank you, Your Honor. May it please the court, counsel, with me at counsel table is Ulrika Connolly, who's co-counsel on this case. I would like to reserve two minutes for rebuttal on this matter. My client, Mr. Reveles, was charged and punished once by the Navy for committing the offense of driving while intoxicated, and then he was charged a second time with that same offense by military lawyers acting as special assistant United States attorneys in federal court, and punished a second time by the federal civilian court for that same offense. The issue here is whether punishing Mr. Reveles in federal court for the offense of driving while intoxicated after having previously been punished by the military in an Article 15 proceeding for that identical offense violated the Fifth Amendment Double Jeopardy Clause, which provides that no person shall be subject for the same offense to be twice put in jeopardy. I think there are three main points I would like to make with this argument. First, that a nonjudicial punishment under Article 15, while an informal mechanism that's designed to accommodate the exigencies of military preparedness and the need for discipline in the military, can by no stretch of the imagination be defined as a civil proceeding as that term is understood in the Hudson case. Secondly, the case that the government relies heavily on and the district court relied on, the Mittendorf case from the Supreme Court, is of little use here in analyzing this issue because Mittendorf dealt with the constitutional right to counsel under the Sixth Amendment and then also under the Fifth Amendment due process clause as applied to the nonjudicial punishment proceedings. Do you view those rights as more or less important than the double jeopardy rights here? And when you make the argument you just made, doesn't that require us to balance which rights are more important? I don't think it's a matter of putting rights on a continuum as one right being more important than another, particularly when we're dealing with the right to counsel, which is a very critical right in form of procedure. But the right not to be punished twice is really a form of a different kind of right. It's not really a form of procedure. It's an absolute bar against proceeding against an individual twice for the same crime or the same offense. It's qualitatively different. It's not a matter of... You would agree, would you not, that in order for double jeopardy to kick in, that both proceedings have to be judicial in nature? Your Honor, I would not agree with that. Under the punishment prong of the double jeopardy clause, there have been cases in which we've had penalties imposed where it's not been purely a judicial-type proceeding. What case or cases are you thinking of? I think the Kurth Ranch case. I think even the case that Hudson, and I may be wrong on the facts here. I'm not sure that involved a judge in a judicial proceeding as opposed to an administrative proceeding. The court there did not hinge its analysis in Hudson on whether it was a judicial proceeding or a non-judicial proceeding. I think the focus is more on the quality of what was being done in the proceeding. I think NJP, I think the heart of the NJP, it is akin to a criminal proceeding. It adjudicates a sailor or a soldier for an offense. And to fall within the NJP, you have to commit something that's defined under the Uniform Code of Military Justice as an offense. Are you suggesting it's a judicial proceeding despite its name? A not unreasonable argument. Well, judicial in the sense of a judge and a lawyer, no. Judicial in the sense of an individual making a factual determination as to guilt or innocence, yes, despite the label of it being non-judicial. The officer who convenes the non-judicial proceeding has to make a determination as to whether the person actually committed that offense. When you look at the Hudson criteria that the Supreme Court set out, how do you analyze this case under Hudson? Of the seven criteria, which do you think are in your favor and which do you think are in favor of the government? And I think your paper said all of them are in your favor. Yes. Your Honor, I would argue that all seven favor us. I think there's two important things on those seven factors. One is our view is that you don't even get to the seven factors. Just looking at the statute and how it's been interpreted, particularly by the military itself, is this falls more on the line of a criminal proceeding than a civil proceeding. Hudson is somewhat difficult to deal with because it basically asks the court to say- I'm puzzled about that because in the Gammons case, which, of course, comes from the military itself, the court stated specifically, it says it underscores the legislative intent to separate NJP non-judicial punishment from the judicial proceedings of the military's criminal law forum, the court-martial, which is directly opposite of what you just said, isn't it? Well, if you look at the manual for court-martial- I'm not talking about the manual. I'm talking about what the court said, the military court. The court in Gammons said-Gammons is-the court of military appeals, I think, somewhat gratuitously went into the Hudson analysis because the issue in Gammons really was quite a different issue, and that was whether- and you have to read the Gammons case fairly carefully. What happened there was the person went through an NJP proceeding. The officer who conducted the NJP proceeding allowed that soldier or sailor to go through an NJP for what he defined as a minor offense. Later, a commanding officer said that was not a minor offense. It should not have been in the Article 15 proceeding, and then they went into more of a formal court-martial proceeding. But doesn't that actually make your case worse? Because it shows that the NJP proceeding, at least for purposes of the military, they treated the NJP proceeding as something that a commanding officer would use to help maintain discipline and impose smaller punishments on troops without going through a judicial proceeding. The NJP means a non-judicial proceeding. That's what that means. Well, the way I would interpret what happened in that case would be akin to a city attorney bringing a murder prosecution in Seattle Municipal Court, and then a King County prosecutor saying, you know, that court didn't have jurisdiction over that offense, which is what Article 15 really- for that offense, the commanding officer decided it was not a minor offense. It should not have been there in the first place. I think you're really stretching it there, counsel. I don't see how-I get your argument on Hudson, whether I agree with it or not, but I get your argument. But I don't see how you distinguish Gammons in the way that you do. Well, there's an additional point on Gammons. Gammons actually is interpreting a provision of the Manual for Court Martials, which builds in double jeopardy protection for punishment. It basically says if you go to an NJP and you get punished, that punishment has to be credited if the person later goes to a court martial. So we really don't have that, the same issue that we have here, where there's no credit going forward. The final point I'd like to make about Gammons- You want to save your time? It's up to you. I'll just make one final point on Gammons, which is I don't believe the court should defer to Gammons in this situation. Even in Mittendorf, the Court of Military Appeals came out a different way than the Supreme Court. And we're not bound by them, but this is their-it's almost like a specialized proceeding, if you will. They know this code. They deal with it a lot more than we do, and that's why the reasoning is important, I think. Thank you, Your Honor. You want to save your time, then, on the rebuttal? I'll save it. We'll hear from the government. Your Honor. Good morning, Your Honor, and may it please the Court. Nicholas Brown of the United States. Article 15, nonjudicial punishment, are administrative hearings with little resemblance to criminal proceedings. There are no judges. There are no lawyers. A conviction does not follow. And the proceeding itself is, in fact, at the service member's option. If an Article 15 proceeding is initiated against a service member, the service member can opt out of that proceeding and demand a higher proceeding, a court-martial. Is that true if he's attached to a vessel? That is not true if the soldier is attached to a vessel or embarked on a vessel, Your Honor. And what do we know about this man? Was he attached to a vessel? He was assigned to a vessel, but at this particular time, the unit was not out at sea, essentially, so that option was not on the table for this particular defendant, Your Honor. And that's why, since 1974, the Supreme Court in Parker v. Levy ---- Could you just give me an authority? How do we know that he had the option? You say he was on shore, but assigned to a vessel. Yes, Your Honor. Is there some law on that? I believe the facts in the record, Your Honor, support the fact that the commander of the defendant in this particular case advised them of his options, including the option not to proceed with that Article 15 proceeding. The limited circumstance where the option to demand a court-martial would not be there would be if the unit was actually out on the vessel. You were describing the rather innocuous proceedings known as NJP. As we analyze NJP historically under Rivera or Hudson, should we look at how it is today, maybe a nice, pleasant little proceeding, or should we consider its historical roots of the captain's mast where it was, let's just say, much more vigorous? I think the historical roots are important, Your Honor, but I think the focus for the Court should be the history of the statute itself and how the statute has been viewed historically. And I think it's important for the Court to focus on, in addition to the analysis in Hudson v. United States, actually a case that was not cited by either party in this matter, and I think it's important and instructive to the Court, and that's the case of Parker v. Levy, which is a very famous military law case. And in that case, the Supreme Court did an analysis of the four different types of adverse proceedings that can be brought against a service member. And when they analyzed Article 15 proceedings, they said that the enforcement of the code, meaning the code of military justice, in the area of minor offenses, is often by sanctions which are more akin to administrative or civil sanctions than to civilian criminal ones. So the Supreme Court, in Parker v. Levy, and then two years later in Mendorff v. Henry, has given this Court clear guidance about how the Supreme Court views these things. They view them as administrative or civil in nature. But you just said, often akin. Often is the word I want to focus on. It's not always. It's often. And some of the remedies under NJP are a little, you know, rather stiff. I'm wondering, when we analyze this, should we be looking at it as applied or should we be looking at it facially? In other words, total potential that could be applied or as it was applied here? Well, I think the Supreme Court has given us a lot of guidance in that area, Your Honor, because they have always talked about how the unique military customs laws and regulations of the military need to be viewed in a different light and that the Congress and the courts should not overly question the discretion used by military commanders to maintain good order and discipline. So I do think we have to keep the military point of view in mind, which is exactly what the Court did in Middendorff v. Henry. They said that soldiers and sailors are typically under various different types of restrictions on their liberty than your average civilian would be. And so the types of restrictions that are optional under the nonjudicial punishment aren't the type that a service member would find as restrictive as somebody who had not served in the military. But the question I was wondering is the statute provides a list of possible remedies, a list of possible punishments. Do we look at what the worst-case scenario of what those punishments should be or could be or do we look at what the punishments were as applied to this defendant? The Court has said in Hudson, Your Honor, that we have to look at the statute on its face. So I think the Court does have to consider all the options that were available to that commander. In this particular case, even though there are some additional punishments that are listed in the statute, there were some that were, in fact, not an option in this particular case. That's true. Correctional custody, as our brief notes, has not been an option for the Navy for over two years. The very limited nature of confinement to bread and water hasn't been an option or wouldn't have been an option for this particular sailor because he was not on the ship at the time. So the commander only had the option of reducing the sailor's rank, reducing their pay, and giving the extra duty and restriction, which was imposed in this case. I also think that if the Court- Do you think we should file the Hudson analysis? Yes, Your Honor, I do. I do. And I think if we do that two-part Hudson analysis, if we look at the statutory construction of the statute itself, I think the title itself is very informative. This is commander's nonjudicial punishment. The fact that the Congress decided that the commander, essentially that sailor or service member's employer, their boss, has the authority to instill this type of punishment, I think it's very instructive. If the Court will recall, when they did the Hudson analysis, the Court focused on the occupational debarment and how that authority was given to a civil agency. I think there's some analogy here, how the authority to impose the punishment is given to the service member's employer. The other thing is the fact that this type of proceeding is, in most cases, optional, makes it much more akin to a civil sanction than a criminal sanction. There's certainly no other criminal type of proceeding where the person who is accused with an offense has the option of proceeding in that venue or not. That alone in the statute makes it more criminal- Clearly in the Hudson case, the Supreme Court's given us some criteria for determining whether the nature of the proceeding is one that makes the person subject to double jeopardy or can benefit from double jeopardy. When you look at the seven factors, of course, your opposing counsel says that all of seven are met here. But realistically, wouldn't you have to agree that the government certainly doesn't win on some of these? Which ones do you think are your weakest and how would you explain them? I think that there are two that are neutral. That is the requirement of looking at whether a sign here is present, also looking at whether it also is a crime otherwise. And so I think those go both directions, and those are, in fact, neutral. There are some that are very strong for the government. Which are they? I think the fact that the sixth and seventh, whether there's a rational alternative purpose for the statute, is clearly in favor of the government. The record from the Senate reporting this execution of the statute clearly shows that there was an alternative purpose here, and the purpose was to give commanders a quick and easy way to maintain good order and discipline without the stigma of a court-martial conviction. And I think that the seventh factor follows that. So those two, I think, are very clearly in favor. So for our purposes, the three of us, when we sit down to analyze this case, is our assignment, if you will, to analyze the facts of this case in the light of the Hudson factors and come up with our own conclusion as to which of these bears most weight? Is it a majority of the seven? Is it a totality of the circumstances? What standard do we use? In Hudson, they said that no one factor controls. So the court needs to consider all seven factors. And let's say we do that. How do we decide? Do we decide this one overbears everything else, or is it four out of seven, or is it just what feels good? Well, I think the court could make its decision. If the court felt strongly that one factor was so powerful, the court could say that makes it civil or criminal in nature. So the Supreme Court has given us seven criteria without any instruction on how they're to be applied. The Supreme Court has told this court to analyze all seven of those factors and make a determination after the court has moved past the first prong, which is the statutory construction analysis. Right. I think there's so much language in favor of the government's argument here in the statutory construction analysis, and in fact this is more civil than criminal, that that outweighs some of the second prong factors considered. So you don't think we even ought to get to Hudson? I don't think the court needs to. Well, the second prong of Hudson, yeah. If there are no further questions, I will leave. I think not. Thank you very much for your argument. We'll hear rebuttal. First, with respect to the Hudson factors, Hudson is somewhat difficult to deal with in this context because it requires the court to put this case either on the side of criminal versus civil. It's clearly not a civil proceeding in the normal sense of what we view as civil proceedings for the arguments made previously. But it's only once you find that the matter's civil that then the burden is on the court to find that applying the seven factors that it's clearly criminal in effect. From your perspective, if we find it's criminal, end of story. That's the end of the story. If we find it civil, then we apply the Hudson factors, according to you. Then you apply the Hudson factors. Following up on Judge Smith, you think you win seven to nothing, huh? Well, that's the argument we made in the brief. What if we find you win four to three or lose three to four? For that matter, how do you feel about the infield fly rule? I think the difficulty here is, is it the number of factors? Is it the nature of the factors? I would argue that the proceeding is adjudicating criminal offense conduct. It's one of the four methods of adjudicating offenses in the military. There's another proceeding, a fifth proceeding, an administrative proceeding, which encompasses purely administrative matters. And it's really not much different than how petty offenses are handled in federal court, where there is no right to counsel, no right to a jury trial, albeit there are some additional rights. Thank you. Your problem is the constitutional amendment uses language, which doesn't speak of punishment. It speaks of double jeopardy of life or limb. The words of the Constitution are not literally taken by anybody. So that's one part of the problem. The other part of your problem is this is a procedure that's gone on in the Navy since the beginning of the country. And to say, well, there's something about it that prevents criminal prosecution, it's very difficult to reach that conclusion. Well, in response to both questions,  concerns of even applying double jeopardy to punishment. However, the majority of the court is still the law of the land by the Supreme Court, that it does apply to punishment as opposed to just subsequent prosecutions. With respect to the second point, we're not attacking the NJP process. All we're suggesting is that you can't do it twice. And, in fact, as a practical matter in this district where we have the Army, the Navy, and the Air Force, it's only the Navy that seeks to bring a sailor before an NJP on an offense and then bring them into federal court for that same offense as opposed to dealing with other issues related to the DUI. Thank you, Mr. Filipovic. And, Mr. Brown, for your interesting argument. It's a very interesting case, and we thank you for your help to us today.
judges: Guilford, Noonan, Smith M.